We will proceed with Bailey v. Metro Ambulance Services, Inc. Mr. Sorkin, you may proceed when ready. Thank you, Your Honor. Good morning, and may it please the Court, my name is Anton Sorkin. I'm here on behalf of the appellant, Bataski Bailey. Your Honor, this case is about the level of deference given to employers to conduct tailored investigations in order to avoid accommodating a religious employee. Now, Mr. Bailey was hired as an emergency-side paramedic in October of 2014 and began work in the following January after completing the necessary hiring procedures. He knew that his position had certain safety protocols and that his religious grooming needs may be of some concern. So, in order to balance his religious practice and work requirements, he spoke to his spiritual advisor and shaved his beard just enough to safely and securely use the N95 mask and any other respiratory-type devices. However, on the first day of the orientation, he was told that he had to shave his entire beard in violation of his religion. That same day, he asked the religious company... Counsel, this is Judge Lagoa. Maybe I read the record incorrectly, but when I read Mr. Bailey's deposition, I thought that it was after he received the handbook and he went to orientation that he went and spoke or he sent an email discussing the fact that he had read the handbook and he realized that he needed to not have any facial hair in order to be on the emergency side of the paramedic unit. Sure. Is that incorrect? There are two responses. As far as the handbook goes, his knowledge regarding the facial requirements preexisted his employment with AMR. He was in this field for 10 years, so he was well acquainted with the safety protocols and that he knew his religion needed to have certain requirements made in order to comply with the safety requirements. So what he did do was agree in regards to his application status that everything was written in there was correct and that the handbook itself could hold him liable in the long term if he was to, for example, fabricate something in his application. In regards to what he had to do for his religion and employment requirements, that stuff came way before he was hired by AMR. And if the record does reflect that, that just shows more of a formative piece of information instead of something that preexisted. But the situation here is that once he did arrive during orientation, he was told immediately that he could not retain his shaving profile. The policy itself was rigid. Counsel, I'm sorry to interrupt. This is Robin Rosenbaum. I think we're all pretty familiar with the facts and the background. I'd like to direct your attention to the retaliation claim. Would you agree with me that the standard there is that your client must show that religious discrimination was the but-for reason for his termination? Yes, Your Honor, on retaliation. Okay, great, on retaliation. Okay, so that being the case, you know, I've got to tell you, I'm not sure your client gets there. It seems to me, and I want to tell you this to give you an opportunity to tell me what I'm missing, but it seems to me that the record is pretty clear that AMR regularly fired people who they found had lied on their application, that that's what happened in this case, and I'm aware that your client has said that he didn't lie on his application, but the fact of the matter is that when he was given the opportunity to explain why he answered no to the question about having been fired previously, he explained why he answered no. He didn't say, I didn't answer no. Why wasn't that enough of a reason for AMR to legitimately believe that he had lied on the application? Right. So, regarding the second question, Your Honor, this goes to the honest held belief doctrine that AMR kind of latches onto throughout this litigation. The opportunity to explain himself was there, and he did avail himself of that. In regards to what he told them during his original conversation in October of 2014 with Ms. Moore, he did explain to her that he put yes and that he intended to resolve these issues with his former employers. I'm so sorry to interrupt, but where does he say he put yes? I don't see that anywhere in his handwritten response. Instead, it seems to me to say the reason that he put no was because his attorney told him that it doesn't really count as a termination. Right. So, the specific location of where he, as I said, throughout the brief itself, he talked about how he continues to contend with that application itself. He was talking about how it fabricated how the information that was presented to him could not have been information that he gave them. He mentioned the specifics of that in his deposition where he said the application itself. He gave Ms. Moore the information in the application itself that there was a contention between his former employers. But throughout this litigation, this is a material dispute that we have, is that he did write that he was formerly discharged, but there was a confusion, and that he asked the employers themselves. But here's the problem with that, right? There's no evidence of that until after he's fired. There's no evidence whatsoever at the time that he's employed by AMR. There's no evidence at the time that AMR confronts him with it. There's no evidence until the very first time that there's any mention of that is when Mr. Bailey himself says so during the EEOC proceedings. That's the very first mention of it. So, I mean, that seems to me to run into sort of the same type of problem as the sham affidavit problem. Why is that not the case? Right, so the evidence itself, so first you have the deposition from Mr. Bailey himself who attests that he did tell Ms. Moore, I'm sorry, the HR director in 2014, that there was confusion regarding his former employer, and that although he did write yes in his handwritten application, that that somehow was transcribed as no in the online application that's being presented in this case. He also explained the same thing to them right before he was put on administrative leave. I'm sorry, Counselor, here's the problem that I see with that. Maybe you can address it. Where in his own handwritten statement does he say that he answered yes? Because I don't see it. I've looked at it very carefully, and I don't see it there. I see the opposite. He's explaining why he answered no. You're referring to the handwritten statement on January 30th whenever he was presented with this accusation? Yes. Right. In regards to that, so that information is not, in regards to him actually explaining himself, there was an entire conversation that he had with Ms. Moore that he tried to explain to her what the confusion was, and that's why he offered in that little space that was provided to him where she needs to seek the resolution. Now, in regards to where he actually explained to the company, which is why you can't have an honest held belief, is because it's in his deposition where he explained that he spoke to Ms. Moore about this confusion during the application process, and then he again spoke to her on January 30th. The entirety of it wasn't recorded. It was just that little piece of information. But he did give Amar the information regarding the former dispute, and so Amar could not have gone into the situation thinking that this is a legitimate issue of fabrication. There was at best a confusion, and this is the material dispute. Counsel, this is Judge Anderson, and I have the same problem that Judge Rosenberg does. I do not believe that at any time before he was terminated, I do not believe that he conveyed to Ms. Moore or to anyone at the company that he had in fact answered yes on the application. Is that not true? Regarding the record, Judge Anderson, the deposition testifies to the clarification that is required for this court. Mr. Bailey told the employer that there was a confusion regarding this former employer. He may have said there's confusion, but in the deposition itself, at page 69, the question was asked, prior to filing your charge with EELC, you never told the company that you believed you told them that you were terminated from other positions in your application. You answered, I don't recall. Right. In other instances, he did explain further that there was some confusion in regards to what he did and didn't say to them. There's a little difference between saying there was confusion and saying that he actually answered yes when the application came to him. And I think one of the more important things, Judge Anderson, in this situation, back to the question that was asked earlier about other people, the valid competitors, is that those individuals that did come forward and did explain to themselves that they actually did fabricate the application and that they didn't feel like it was something that they needed to actually include in their application. Two minutes remaining. And why this entire – the confusion itself is important because it goes to the entire context of what was going on with AMR in regards to the retaliation claim, especially when you have pattern shifts regarding a protected activity and then following, within a 24-hour span, some form of adverse action. And so the confusion itself has been explained in the deposition itself, but it's impossible to understand the confusion outside of the entire context of how the retaliatory action was taken on behalf of AMR. And you have this all the way up – But, counsel, there's – this is Judge Lagoa. I mean, when you read the deposition transcript, there isn't anything where it's clear that he made it – that he told Ms. Moore decisively that he had answered yes. There is just nothing in there in the record that supports that statement. Am I wrong? Is there somewhere – can you point to somewhere in the record that shows that? It is in the record, Your Honor. There was a question – I don't have the exact location right now, but I will find it for you for rebuttal – and where he was asked about the confusion, and he did say that he, without reservation, said that he put yes, that he was terminated. However, this is not the employment contract that he signed or that he submitted. The one that is used in this case doesn't have his signature bearing his – agreeing with it. And the fact that the case kind of – I mean, there's a suspicion that the case itself is something that needs to be kind of considered in regard to the entirety of what he told the company, because it does show from the very, very beginning, from the first day, that the company itself saw him and his religious needs as a problem in regard to the contract. And they did nothing to try to accommodate him on the emergency side, and gave him an ultimatum to work the non-emergency side or essentially quit. Let's discuss the accommodation. Is it your position that offering him the non-emergency side is not in itself a reasonable accommodation? That's correct, because of all the things that he mentioned in regards to the loss of skill, the opportunity to interact with the community, and the whole mobility… But what case supports that position, because the case law suggests that a reasonable accommodation does not have to be equal. In fact, it could have lesser benefits. That's correct, but it cannot be substantially adverse, and it cannot undermine his full mobility in regards to some form of adverse employment action. Now, this is one of the material issues in this case, is whether or not the two positions are comparable. And they have to be reasonably comparable. That's the language this court has used. And they are simply not reasonably comparable. And what case are you relying on? I'm sorry, I don't have that in front of me. Again, I will get that for you on rebuttal. Because the case I believe you're relying on does not deal with religious accommodation. It deals with other issues of Title VII. So, you can address it on rebuttal. Most of his cases dealt with the adverse employment. Correct. Correct. So, if, and I believe that Judge Anderson is correct, how are those cases not distinguishable by counsel? So, regarding the, so the reasonable comparable issue itself has to do with kind of the adversity that is being implicated onto the employee. We've argued in our opening brief in the reply, this idea that you can't have a reasonably comparable transfer. Again, those do not deal with the religious accommodation issue. So, again, how then do you distinguish, how do you tie those cases to religious accommodation, which is reasonable accommodation on religious belief? And this is one of those issues that is case by case. And the judges, lower court has to defer to the individual at the summary judgment stage to determine what is the relative reasonableness of the two positions. And unfortunately in this case, lower court simply deferred to AMR and to the statements of Ms. Moore and to the orientation leader regarding that the non-emergency side had comparable skills, which is clearly a dispute. All right, counsel, I think we have your argument. And we will hear from Ms. Wilber. Good morning. May it please the court, my name is Heidi Wilber, and I'll be presenting argument on behalf of the Appalachian Metro Ambulance Services, Inc., who I'll refer to as AMR. There's two main points that I'll be making during this argument. First of all, AMR satisfied its Title VII obligation to provide a religious accommodation to Mr. Bailey when it offered him the option of working as a non-emergency paramedic. Second, there are no genuine disputes of material fact that would prevent summary judgment in AMR's favor on Mr. Bailey's termination claim. To first address the reasonable accommodation issue, I think it's important to focus on the fact that it is undisputed in this case that AMR's immediate and first response to Mr. Bailey's request for a reasonable accommodation on his first day of orientation was to inform Mr. Bailey that he could have an accommodation. Specifically, on that first day of orientation... Yes, counsel. I'm sorry, this is Robin Rosenbaum. I will tell you that this is where I have an issue with your case, and maybe you can address it for me. And it is on the reasonable accommodation claim. The problem for me is the Abercrombie case, which basically says that when it comes to religious practices, that we have to do better. We have to treat them better than otherwise. And the problem here is that it seems like there is possibly, or there may be, an issue of material fact as to whether requiring him to work solely on the non-emergency side was substantially the same as allowing him to work on both sides. And the problem here is that, in this case, under Abercrombie, it seems to me that you have to give the reasonable accommodation unless it would cause an undue hardship. And here the problem is I don't see anything in the record that shows that it would be an undue hardship because, A, AMR currently allows peers to be worn of the type that Mr. Bailey was seeking to use. B, the N95 mask fit over so there weren't any actual safety concerns. And, C, nobody asked DeKalb County whether they would allow an exception. So I guess my first question for you is whether you agree that Abercrombie requires the accommodation unless there would be an undue hardship on the company. And the second question is, if you do agree, then why doesn't your client have a problem? Well, to your first question, I don't think Abercrombie eliminates the requirement of providing a reasonable accommodation before moving to that undue hardship step. And a reasonable accommodation is... Let me say that I agree with that. But let's say that there is a material issue of fact over whether this is a reasonable accommodation. Sure, I understand. Well, first of all, the issue with this policy here was that it was their major client's policy. And it would cause an undue hardship to cause... to, you know, violate the major client's rules in this case. But, see, I can go with that except that the problem is they never ask the client. So how do we get there? How do we get to the point of it would be an undue hardship when they never even ask? So we don't have anything on the record that says the client said no and there's no exception that it'll make. Well, actually, the record does show that Ms. Moore, the HR supervisor, she spoke with Thomas Moore, who's a field operations... That might be his wrong title, but Mr. Thomas Moore, who was the operations manager, I believe, and he had a lot of dealings with the client specifically. And she went to him to see if there could be an exception. And he was adamant that they, at that time, there was no exceptions allowed to this policy. But, again, he didn't ask. He did not ask the county. There's nothing in the record that shows that he asked the county. Isn't that right? That's correct. But at the time, he seemed very adamant to understand that policy and understand that there were no exceptions at that time. Counsel, may I ask you a question? My understanding of the case law is that Title VII does not require an employer to give an employee a choice among many accommodations. It's just for the accommodation, it has to be one that the employee suggests. It has to be something that shows a reasonable accommodation, and that could be any reasonable accommodation that's sufficient to meet the religious accommodation obligation. Is that accurate? That is my understanding as well. And in this case, one of the issues is that Mr. Bailey has essentially asserted that the only possible reasonable accommodation is the one that he preferred. And that's only to work emergency, on the emergency side. Correct. And the pay scale for both emergency and non-emergency were the same. Yes, they received the same pay. They received the same benefits. You apply for the position under the same job title. And my understanding from reading his deposition testimony is that when he applied, the application didn't specify whether it was for emergency or non-emergency. In fact, the job description is the same for both. Yes, that is absolutely correct. And, in fact, another way that you can see how similar the jobs are is that they didn't even have to go to HR to decide to reassign him to this. They just said, okay, well, we'll just assign you these types of routes. They attend the same orientation for this position. I mean, these positions really are quite alike, and certainly alike enough to satisfy the standards in place in the 11th Circuit. So you would agree then, just to be clear here, counsel, you would agree that the issue here – well, maybe you wouldn't agree – that the issue here rises or falls on whether this was – I don't think it rises or falls on that, because I think even if we accept Mr. Bailey's complaints about this position as true, it's still not enough to show that it wouldn't satisfy that standard. Okay, but I think that's not the question I'm asking. I'm sorry, counsel, but I'm saying assume, and we may not conclude that there is a material dispute of fact on this. We haven't discussed this case, so I don't know. But assume for purposes of our discussion that there's a material issue of fact on that, so as to whether this is a reasonable accommodation. So for purposes of summary judgment, we have to assume that it's not a reasonable accommodation. Then my question for you is, why is there not a problem then under Abercrombie? I'm not sure that you have to – I think the reasonable accommodation determination is one that is a matter of law anyway. But if you were to find that, there's still not a problem under Abercrombie, because he was not denied a job. He was just given a different assignment. And having to go against their client's requirements would cause an undue hardship in this case. And even looking at the language of Abercrombie, the language of the 11th Circuit also clarifies that an accommodation can be reasonable if there is a slight adverse impact to the employee to some extent. But again, I'm sorry, Counsel. But again, that is assuming that it's a reasonable accommodation. And you're right that an aspect of this is certainly a legal issue. But an aspect of it could be a material issue of fact if the parties can't agree on what the job on each side entails. So we're not able to make a determination of whether it's a reasonable accommodation. You understand what I'm saying? I believe so, too. I just want to point out one other aspect of this, which is that a lot of Mr. Bailey's complaints about it have some major evidentiary deficiencies. For example, he doesn't have the personal knowledge to support some of his assessments about the position. He never worked in the position. He testified that he'd only rarely done non-emergency work. And, in fact, he'd done so little non-emergency work that he was unable to answer questions about the type of situations that might come up. And in a lot of cases, his testimony was simply based on his subjective perceptions about why he believed that position was beneath him, essentially. And the case was pretty clear that that would not be enough to defeat a claim that this was a reasonable accommodation. Okay, well, I'll move on to my next point, which is that there's no genuine disputes of material fact that would prevent summary judgment in AMR's favor on Mr. Bailey's termination claim. Mr. Bailey here retains the ultimate burden of persuading the court that he was the victim of retaliation. And to succeed, he has to show that AMR's reasons for terminating him were false and that retaliation was the real reason he was terminated. Mr. Bailey failed to do either in this case. Notably, Mr. Bailey cannot satisfy this burden by quarreling with the wisdom of AMR's decision or the correctness of the facts underlying that decision. And because a pretext analysis focuses on the employer's honest belief, any questions about the basis of AMR's termination decision have to focus on what AMR knew at the time of the decision. AMR's thoroughly and consistently explained the legitimate nondiscriminatory reason why it terminated Mr. Bailey's employment. AMR takes falsification of company documents extremely seriously. As a company involved in healthcare, they have to build a government and Medicare programs, and so they view accurate documentation and honesty as being of paramount importance in their employees. Counsel? Yes. I'm so sorry to interrupt again, and I want to bring you back for a moment to the first issue, the reasonable accommodation issue. Let me ask you, what is your response to why it does not create a material issue of fact, a dispute over a material issue of fact, that Mr. Bailey asserts that the actual position of non-emergency is different from the position of emergency, and that he knows this from having trained, you know, whatever training he did, I guess, during the period. But that the emergency side is much more sort of responsive, you know, reactive, if you will, whereas the non-emergency side is, you know, scheduled transports and things of that nature. Why do you think that that does not create a material – why do you think that that does not create a material issue of fact over whether the two positions are equal, equal enough for purposes of reasonable accommodation? Let me put it that way. Well, I think, as I pointed out, Mr. Bailey did not actually – did not actually – was not able to answer questions about what types of emergency situations arise in the non-emergency position. And there is a great deal of testimony that, you know, those transfers are not just quite as easy as they sound. They involve – Two minutes remaining. Moving extremely sick patients, patients who have – who are on ventilators, patients who – So, I just want to be sure I understand. Your argument for why there's not a material dispute of fact over this is that we can't rely on Mr. Bailey's what is involved in the non-emergency transport versus emergency transport. Is that right? That is one piece of it. And also another piece is that they are the same job description. They are the same job title. They, you know, the courts – the case law is pretty clear that a transfer to a job of a different nature can still be – is still a reasonable religious accommodation. So, the fact that there's – I'm sorry. Let me ask you this thing. Let's assume, just for purposes of this discussion, that we could rely on what he says about the differences between the two positions. Give me your best argument for why it doesn't matter. It doesn't matter because the positions are still close enough in terms of there's no – this is not even a case where there's an adverse impact of him transferring. He is still going to see the same pay, the same benefits, the same job title. He's going to – this job is – the paramedics on both sides attend orientation together. They have the same job description. And so, even if there is a difference in their day-to-day duties, that is not enough to take this out of the realm of a reasonable accommodation, even if his assertions about it are accepted as true. Would you agree if, for example, when he testified after some of the other jobs, there was one company where he testified that they did not have a non-emergency side? So, I assume there's some ambulance companies that only provide emergency service versus – and maybe some only provide non-emergency service. If your company only provided non-emergency service and the client would not allow an accommodation, then you would have to – you would concede that you would have to show them and do burden and under hardship. In that case, if they could not accommodate him and they only have the one side, that would be true. But the case law here is that even if you have, let's say, for example, that – I think there was one case that involved a milk route. I think there was an Indian River in the Walker case where even if the route offered was paid less, that was still considered to be a reasonable accommodation, even if it adversely impacted the employee. Is that accurate? That's true, yes. And there are cases where they've still found reasonable accommodation when workers have been transferred to other locations, when they've been paid less, when they've been taken out of a customer-facing position. The Comra case is extremely on point in this situation. Council? Yes. I'm sorry. How do you see the Abercrombie requirement that we treat religion better grafting onto the reasonable accommodation requirement? In other words, does it have any effect on how we analyze whether something is a reasonable accommodation or is it – or do we analyze whether something is a reasonable accommodation and then – you know, outside of the scope of whether – of Abercrombie? You know what I'm saying? I believe so. I don't think it changes the analysis. I think, you know, by providing accommodation for a religious practice, you already are treating them better. I don't think it removes that requirement of following the existing case law and analysis on a reasonable accommodation. It's just – you know, restates the Title VII requirement of, you know, ensuring that these accommodations are provided for religious practices, which is in itself treating someone better. So I guess – so your position would be that even if it doesn't cause an undue burden to the employer, the employer does not have to provide a certain kind of accommodation that is requested by the employee if it's religious? Correct. The employer does not have to require the exact accommodation that the employee prefers. Even if it doesn't impose any undue burden whatsoever. In other words, no skin off their back. They could just as easily do it, but they just don't want to for whatever reason. Maybe they don't even like the religious practice, but they don't have to do it as long as the accommodation that they provide is one that would otherwise be deemed reasonable outside of the religious context. I think that's fundamentally true, that they wouldn't have to require it even if there was undue burden, but I think that would affect the reasonableness analysis in that case. Whereas here, you know, there's no question that they had a reason for not giving him the specific accommodation he wanted, and they still gave him... Except that the reason here is that the county had this requirement, but they never bothered to ask about it. So that's the problem for me here. See, I think you are agreeing, and maybe I've misunderstood, that there comes a point, because of Abercrombie's unique kind of take on this, that religion must be treated better, that if there's no undue burden, that might affect the reasonableness of an accommodation. I think that's really the crux of this particular claim, and probably where this claim either gets affirmed as being properly dismissed, or gets reversed. I mean, I don't know if you want to address that any further, but that's what I'm sort of wrestling with. My position is that Abercrombie doesn't change the order of analysis in terms of looking at the reasonable accommodation first, and then the undue hardship, and that demandless burden. Your position is that you only get the undue hardship if you cannot provide the reasonable accommodation. Correct. And the reasonable accommodation is an accommodation that does not necessarily have to be the same exact one that the employee wants, but it's something that is reasonable, and an accommodation for purposes of the religious beliefs that the employee has. Yes. And it could have an adverse impact on their employment, whether it's a benefit or a pay, even. That's what some of the case law suggests. Yes, that's our position. Well, I believe my time has expired, so thank you very much. All right, thank you, counsel. Mr. Sorkin, you have three minutes for rebuttal. Thank you, Your Honors. So Abercrombie has discussed, and this is what Justice Alito says in concurrence, is that Title VII requires otherwise neutral policies to give way to the need for an accommodation. That means that an employer comes forward, it asks for a religious accommodation, and that the employer's responsibility then is to offer it or show that it cannot do so without undue hardship. In this case, there's zero evidence for undue hardship. In fact, we know that because after Mr. Bailey was fired, they reached out to DeKalb finally, and DeKalb County had no problems accommodating any future requests of the same nature. In regards to the opposing counsel's mention that Mr. Bailey did not have the requisite experience working on the non-emergency side, this essentially undermines their own reliance on the testimony of the HR director, Ms. Moore, who had even less experience. The lower court cannot credit others like Mr. Rocham's self-serving affidavit and the statements filed by Ms. Moore while ignoring Mr. Bailey's own knowledge after 10 years in the field regarding the comparative advantages of working on the non-emergency side. The reason why Mr. Bailey did not have a lot of experience working on the non-emergency side is because of all the disadvantages that come with working on the non-emergency side. Regarding the issue of the reasonable comparable positions, that does come from CAMARA, which is a lower court opinion cited to a Fifth Circuit, so I do apologize that that's not from this circuit's language, but that does discuss the reasonable accommodation issue, and CAMARA was cited in the original brief. And then in regards to the actual record where Mr. Bailey was explicit about the application being fraudulent, if you look at his depositions on pages 34 and 35, he was asked if there's anything inaccurate in the document, and he says yes on page 5, where it says, have you ever been fired or asked to resign? It was highlighted no. I don't believe I put that in that spot. Would you recall putting that spot on your online application? He said yes, and then I don't recall the exact verbiage, but something saying determination were disputed or something to that effect, which is what he explained to Mr. Moore. Counsel, I'm sorry to interrupt. This is Robin Rosenbaum again. What is your best argument for why there's a material dispute effect over whether this position as a non-emergency transport person paramedic was substantially the same as the position as an emergency transport person? The two positions themselves, Mr. Bailey testified throughout there is a significant disadvantage in working on the non-emergency side in regards to not only his full mobility, his prestige in the field, in regards to his community involvement, in regards to the skill set that he would acquire working on the emergency side. That would be stifled if he worked on a non-emergency side. There's a whole list of criteria that the application itself mentions that he used to apply, and he himself is adamant about the two being disconnected in regards to the relative advantages of working both positions. That is the material dispute, and the lower court has to have deferred to the experience and testimony of Mr. Bailey in this regard, and what they end up doing. But counsel, let me ask you a question. Under the case law, why is this not a question just that it's a question of law? Because the case law suggests that even if there was a difference in pay or in benefits, the accommodation, any accommodation, is considered a reasonable accommodation. So I'm kind of at a loss, because in this case, he even testified that he didn't even realize that they made the same salary. So he automatically said no without even knowing what the benefits were versus if there was even a difference in whether emergency or non-emergency. So the question is, how is this not a question just of law for the trial court to make its determination when it's a reasonable accommodation? First of all, the standard review at summary judgment means that whatever the facts are, the facts are given and in light and most favorable to the non-moving party. No, let's assume that everything that Mr. Bailey said was accurate, that this was just granny coding, that it's not as exciting. It's basically going to be boring as opposed to being on the emergency side. Let's assume that all is accurate. How is that not, as a matter of law, still not a reasonable accommodation? Because there's a point where reasonable accommodation becomes an adverse action and it becomes unreasonable. And so in this situation, when the two positions... But we have case law from our circuit that says that any reasonable accommodation is sufficient and that it could impact even the terms and benefits of the job. In the Indian River case, you had where the milk route changed the terms of the employment and they were going to make less money and that was still found to be a reasonable accommodation. Right, and we have no contention in regards to if it is really a reasonable accommodation. Our contention is that the accommodation offered by transferring him to the non-emergency side was not a reasonable accommodation because of all the things that we state in our brief from pages 43 to 47 regarding formal mobility, community engagement, and employment opportunity that he would be losing by being transferred, which is why he avoided this position for his entire career in only slight instances and why he continued to ask his former employer to accommodate him. But again, let's assume what was the mobility. He still had over five years of management so he would be able to do and change careers at some point if he wanted to go to another job. Right, and I think the formal mobility is attached to the prestige and to advantages that he, not necessarily prestige, but he knew would be attached to the emergency side. We don't have, unfortunately, the record itself is not specific on the details of what the exact things. There's limitations to management skills that were mentioned in the brief, limitations to his handling of a strange situation, experiences in multitasking. There's a list of things that we mentioned in the brief that goes to show the relative disadvantage of working on the non-emergency side because he would not gain those experiences. And the only thing that the AMR has in response is essentially a deposition of their own HR director, which is just as it is Mr. Bailey's self-serving, but the lower court is supposed to defer to the non-moving parties information. Counsel, this is Judge Anderson. I did not see in your brief any argument based on Abercrombie or otherwise to the effect that religion is a little different and that it should affect what the case law holds with respect to reasonable accommodation. I see nothing in your brief that argues along the lines that Judge Rosenbaum has been suggesting to your benefit in this argument. Am I wrong? We talked about Abercrombie... You cited it, but you do not argue that it says that religion should be treated differently and more favorably than other reasonable accommodation issues. Judge Anderson, we do state that explicitly in the brief on page 53 where it says, importantly, Title VII does not demand neutrality with regard to religious practices, but instead requires that employees with religious accommodations claim the extended favorable treatment. I'll look at that. Thank you. Page four at the bottom, and then page 53 on the actual document on top. I think my time is up. For these reasons, we ask that you reverse the lower court. All right. Thank you, counsel. We'll take the case under advisement.